### KEARNEY *v.* MORRIS *et al.*

*(Supreme Court, General Term, Fifth Department. April 13, 1892.)*

1. PARTNERSHIP—EVIDENCE OF.

In an action for an accounting of a partnership, of which plaintiff's intestate was alleged to have been a member, where there were no written articles of partnership, and the testimony was conflicting as to whether or not the intestate was a member of the partnership, written extracts from the books of the firm, showing that the intestate received a certain proportion of the profits of the firm, and the fact that the account-books of the firm had been surreptitiously disposed of, were sufficient to create a preponderance of evidence in favor of plaintiff.

2. SAME—ACCOUNTING—ESTOPPEL.

In such case plaintiff is not estopped to demand an accounting because she accepted a sum of money from defendants as payment in full of her claim, where it appears that the money was not paid as a sum coming to the estate on the ground that the intestate had been a copartner with defendants, but that it was offered and paid solely as a sum due and owing by them to plaintiff, irrespective of any claim of copartnership.

Appeal from special term, Monroe county.

Action by Margaret Kearney, as administratrix of Patrick Kearney, deceased, against Charles E. Morris, as executor of George H. Thompson, deceased, and Henry M. Ellsworth, and John Luther, for an accounting of a copartnership, of which plaintiff's intestate was alleged to have been a member. From a judgment dismissing the complaint, but not on the merits, plaintiff appeals. Reversed.

Argued before DWIGHT, P. J., and MACOMBER and LEWIS, JJ.
*C. D. Kiehel,* for appellant. *John Van Voorhis,* for respondents.

MACOMBER, J. This action was brought against George H. Thompson and others for the purpose of obtaining an accounting of a copartnership which was alleged to have existed between the plaintiff's intestate, Patrick Kearney, George H. Thompson, Henry M. Ellsworth, and John Luther. The partnership was alleged to have existed from the 1st day of January, 1875, until the 22d day of December, 1879, when the plaintiff's intestate died. The action was originally begun in the year 1880, but the defendant John Luther was not a party thereto. Upon the trial of the cause, however, in the year 1882, the learned justice presiding, after hearing the testimony of John Luther, who was called as a witness for the defendants, suspended the further hearing of the case, and directed that John Luther be brought in as a party defendant, upon the ground that he was a partner in the firm of George H. Thompson & Co. After an amendment of the summons and complaint proper answers were filed, and the case came on for trial before the same justice in December, 1887. After the submission of the case the learned justice held as a matter of fact that Patrick Kearney was not a copartner in the firm of George H. Thompson & Co., and consequently his administratrix could not maintain this action. The complaint was accordingly dismissed, but not upon the merits.

The learned justice was impressed, as his opinion indicates, with the exceedingly unsatisfactory condition of the evidence which related largely to the declarations of deceased persons, Patrick Kearney and George H. Thompson. There were no written articles of copartnership. Evidence of the actions of the parties under the alleged agreement was accordingly resorted to, and the case is filled with declarations made by them under varying circumstances. Books of account seem to have been kept of the business of the company, which was shown to be quite extensive; but these books were not only not produced upon the trial, but it was shown that they had been surreptitiously disposed of. But the case nevertheless shows some written evidence bearing upon the question of copartnership, which, as far as it goes, is of an entirely satisfactory and conclusive character. A written statement is produced in evidence by the plaintiff, shown to be in the handwriting of the defendant Ellsworth, and which purports to be taken from the books of the concern. That statement is as follows, (Exhibit C:)

"STATEMENT FOR 1875 AND 1876.

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Total profit on all work, | - | - | - | - | - | - | | $43,909 46 |
| G. H. T., - | - | - | - | - | - | - | $10,977 37 | |
| H. M. E., | - | - | - | - | - | - | 10,977 36 | |
| P. K., | - | - | - | - | - | - | 10,977 36 | |
| J. L., - | - | - | - | - | - | | 10,977 37 | |

$43,909 46

[Indorsed:] "Statement 1875 and 1876."

Under another exhibit, (D,) dated January 8, 1878, the following entry appears: "1876. December 31. By profits on work for 1875 and 1876, $10,977.36." Under another statement, (Exhibit E,) bearing date September 25, 1878, the following occurs in regard to Patrick Kearney's interest in the firm: "September 25th. His share of the profits for 1877 to September 25th, 1878, $5,350.00." In another exhibit, (B,) under date February 28, 1880: "January 24th. By amount due P. Kearney for his share in mason-work, &c., for 1879, $2,250.00." These several accounts, while they might have been incurred by a clerk or by a foreman of certain departments of the work of the concern, appear to resemble more nearly the accounts which a partner would naturally have with a concern having the extensive dealings of George

H. Thompson & Co. It is, perhaps, not necessary to refer to such accounts further in detail.

Oral evidence was given by many witnesses in behalf of the plaintiff that Mr. Thompson had, in his life-time, stated to sundry persons that Mr. Kearney was a copartner in this firm. In several instances such declarations were made under circumstances that called upon Mr. Thompson to speak accurately in regard to the fact. I will not quote such evidence at large; but in one instance an attorney who had a claim against Mr. Kearney, and who was interested in knowing his financial situation, applied to Mr. Thompson, and received the information, as he testified, that Kearney was actually a partner in the concern. This, upon the first hearing of the case, which was before the death of Mr. Thompson, was denied by the latter, who was called as a witness for the defendants. The written exhibits above mentioned may also be perfectly consistent with the contention now made by the learned counsel for the defendants that the compensation given from time to time to Kearney out of the earnings of the firm was not profits coming to him as a copartner, but rather as compensation as an employe and foreman; or, as some of the witnesses testified, that these several sums were arbitrarily adopted by Mr. Thompson as suitable compensation to Kearney for his services. I say that these documents are not inconsistent altogether with such contention. But, in order to break their natural *prima facie* influence upon the case, it seems to me that it was incumbent upon the defendants to show an actual agreement between Kearney and Thompson & Co.; and, further, that such compensation to an apparent share of the profits was resorted to only as a means of ascertaining a salary that had been agreed upon. But the evidence of John Luther, taken as a whole, given in this case before he was made a party defendant, goes far to overthrow any such contention, because he, in effect, said Kearney was working for wages, and his compensation depended entirely upon the judgment of Mr. Thompson. Participation in the profits of a copartnership may or may not be of importance as between the copartners, according to the circumstances of each case. In the absence of other convincing evidence, documentary proof that one of the four men engaged in the joint business had received a certain proportion of the profits would raise a presumption that he received such profits as a copartner, and not merely as a measure of his compensation as an employe. Mr. Luther further testified at the time stated that the profits had been divided into three parts, and that he received one-third thereof. Exhibit C, above quoted, with great conclusiveness proves this statement to be erroneous as matter of memory, for it shows that there were four persons sharing in the profits, and that the sum coming to one was equal to that of any of the others,—as is indicated by the initials of the four men conducting the business of the firm.

But it is claimed that there is oral evidence to the effect that Kearney was not a copartner. This evidence consists of that of John Luther, who at first testified that Kearney was present when the copartnership of George H. Thompson & Co. was formed, but afterwards said there was no one present except Thompson, Ellsworth, and himself. The defendant Ellsworth testified that Kearney was not present at the time of the organization of this copartnership. Nathaniel Thompson, a witness for the defendant, and brother of the deceased, George H. Thompson, gave, in 1882, evidence somewhat in detail to the effect that Kearney had repeatedly admitted to him at different times, under varying conditions, that he was not a member of the firm of George H. Thompson & Co. at the time covered in this inquiry. The witnesses John Siddons, John E. Saal, James D. Casey, John Fox, J. Herbert Grant, Ambrose McLaughlin, William T. Curtis, and Joseph Lewis also gave testimony of declarations alleged to have been made to them respectively by Kearney at different times. The testimony of the witness Nathaniel Thompson, which originally was the most direct and circumstantial of all the wit-

nesses, cannot be regarded as of very great weight, as he finally left his character as a witness, when recalled at the continuation of the trial in 1887. At this last hearing he substantially admitted, as a witness, that under the direction of his brother, George H. Thompson, he was the means of spiriting away the account-books of the firm, covering nearly the whole of this period of time, and without apparent reluctance admitted that the purpose on his part was to destroy evidence of the actual existence of a copartnership in which Kearney was one of the members. His testimony leaves the case with the advantage to the plaintiff of all of those presumptions which a spoliation of written evidence creates against the perpetrator. In respect to the testimony of the other witnesses, touching alleged oral declarations of Kearney, supposed to have been made against his interest during the time covered by this alleged copartnership, as well as the testimony of others relating to like declarations of George H. Thompson, it may briefly be said, though competent and relevant on the ground that they were made against the interest of the party, that a somewhat protracted perusal of the case in detail justifies the characterization so often made of it, that there is no species of evidence so susceptible to error, so inconclusive and misleading, as the imperfect recollection of witnesses to merely casual conversations upon subjects in which they were not specially concerned. Upon the principal question of fact, therefore, it seems to this court that under the record sent to us a preponderance of the evidence, which consists of written extracts from the books of the firm, coupled with the presumptions against the defendants which the destruction of the firm's books creates, is in favor of the contention made in behalf of the plaintiff, and that she has a right to an accounting of the copartnership, and to payment to her of any balance that may be found due upon such accounting.

But it is claimed by the learned counsel for the defendants, inasmuch as the plaintiff received the sum of $2,415.18, which was paid to her by the defendants after the decease of her husband, that she is estopped to claim any more, because, as is shown, she was informed that if she accepted the money it must be regarded as payment in full of her claim; and that at first she declined to accept that sum as a balance due the estate represented by her until she had consulted counsel, and that, after consultation with counsel, she received this sum of money. It is not shown, however, that the plaintiff was made acquainted with any of the facts showing the actual condition of the accounts of the copartnership. The money was not paid by the defendants as a sum of money coming to the estate on the ground that the decedent had been a copartner with the defendants. It was offered and paid solely as a sum of money which the defendants said was due and owing by them to the plaintiff irrespective of any claim of copartnership. In these circumstances, the receipt of the money was not conclusive upon the plaintiff. Story, Eq. Jur. § 523. This conclusion renders it unnecessary to consider the competency of a portion of the testimony of John Luther, given at the first hearing of the case, and at a time before it was known by the plaintiff that he was a member of the firm of George H. Thompson & Co. The judgment appealed from should be reversed, and a new trial had, and an issue should be framed as to the fact of the alleged copartnership, and submitted to a jury at the Monroe circuit.

Judgment appealed from reversed, with costs to abide the event, and the fact of copartnership tried at the Monroe circuit before a jury, upon issues to be framed by the special term. All concur.